UNITED STATES v. BUNTING et ux.

(District Court, D. Oregon. July 28, 1913.)

No. 3,840.

WATERS AND WATER COURSES (§ 252*)—IRRIGATION—LATERAL DITCHES—RIGHT TO CUT—ESTOPPEL.

    Where defendants over whose land certain irrigation ditches belonging to a government irrigation project was located became a member of a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

water users' association which owned the project prior to its incorpora-. tion in the government work, and one of the by-laws of the association provided that such rules and regulations as the Secretary of the Interior might promulgate relating to the administration and use of the water should be binding on the stockholders of the association, and the secretary put into effect certain rules prohibiting water users from cutting the banks of any canals or laterals and from taking water therefrom except at places designated by the government, defendants were estopped to claim the right to break down the banks of a lateral ditch and take water therefrom at a point not so designated, on the ground that, because they owned the fee in the soil of the ditch, they were entitled to take water at whatever point they desired.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 252.*]

Suit by the United States of America against C. A. Bunting and wife. Decree for the United States.

Clarence L. Reames, U. S. Atty., of Portland, Or.
C. C. Brower, of Klamath Falls, Or., for defendants.

WOLVERTON, District Judge. The government now is, and since 1905 has been, engaged in the construction and completion and in the operation of an irrigation project designated as the "Klamath project," situated in the Klamath Basin in Oregon and California. In the course of the work, the government acquired, by purchase from the Little Klamath Water Ditch Company, a canal known as the Main Adams Canal, extending northeasterly and southwesterly across section 35, township 40 south, range 10 east, together with certain laterals, among which are those known as the Stukel and Parrish laterals.

The defendants, C. A. Bunting and his wife, M. Veneta Bunting, are, and have been since 1902, the owners and in the occupancy of certain lands situated in said section 35, through which the Main Adams Canal and Stukel and Parrish laterals extend, and to the south boundary of which the Offield lateral has been constructed. They acquired these lands of Samuel C. Trayner, and at the time they so acquired them the Stukel lateral was serving not only the lands of the defendants, but other lands further to the north and northwest, namely, the Stukel, Hill, and Pettit lands, and is now serving the Loomis lands. The Parrish lateral was serving the defendants' lands and the lands of Parrish; the latter being succeeded by purchasers from him of later date.

The Main Adams Canal was at first constructed farther to the south, but subsequently the route was changed to its present location, and this before the defendants acquired their interest in the lands and premises traversed by said canal and its laterals. J. Frank Adams was the initial promoter of the canal and the irrigation system, his scheme being to form a corporation, with shareholders of persons having lands for irrigation along the proposed route of the canal with its laterals, each holder to take a share of stock for each acre of land to be benefited, and it was in pursuance of this scheme that the organization was perfected and the Little Klamath Water Ditch Company incorporated.

At that time Samuel C. Trayner was in possession, under government right, of a tract of land through which the Stukel lateral was later constructed, and he, with Adams and others, entered into a mutual agreement, whereby each granted to the others perpetual rights of way for the construction and maintenance of all ditches and flumes necessary to convey water from the ditch of the Little Klamath Water Ditch Company across any and all lands' held by them and lying under said ditch. At about the same time Trayner subscribed for 50 shares of stock in the Little Klamath Water Ditch Company. J. Ross Trayner was at the time in probable possession under government right of other lands through which the Adams Canal and the Stukel and Parrish laterals were later constructed, but does not seem to have entered into agreement, as did Samuel C. Trayner. Nor did he take stock in the ditch company. The defendants derive their title to a portion of the lands now owned by them through J. Ross Trayner; the latter having conveyed through mesne conveyances to Samuel C. Trayner. It should be further noted in this relation that the defendant C. A. Bunting succeeded to 25 of the 50 shares of stock which Samuel C. Trayner subscribed for in the ditch company.

Adams and other witnesses relate' that, in the construction of the canal with its laterals, all parties holding lands along the course of the ditch and under it freely permitted the construction of said ditch and its laterals over their premises, without protest or objection, with a view to sharing in the benefits that would inure to their premises from use of the water for irrigation and other purposes, so that the ditches and laterals that were constructed were so constructed with the free assent of each person whose lands they traversed.

In connection with the Klamath Basin project, there was organized, under the laws of the state, a corporation known as the Klamath Water Users' Association, and it was only through membership therein that rights could be obtained for use of water to be supplied by means of the irrigation project. Under the by-laws of such association, such rules and regulations as the Secretary of the Interior might promulgate relating to the administration and use of water were made binding and obligatory upon the stockholders of the association; not more than one share of stock to be allotted for each acre of land or fraction thereof.

On March 17, 1905, the defendants became shareholders in the association to the extent of 290 shares, and thereby became obligated by the terms of their stock subscription to all the by-laws of the association, as well as to the observance of such rules and regulations for taking water and the use thereof as the Secretary of the Interior might promulgate. In due course the Secretary of the Interior adopted and put into effect certain rules and regulations relating to such project as in substance and effect prohibit water users from cutting, breaking down, or destroying the banks and retaining walls of any canals or laterals pertaining to the project, and from taking water from any of such canals or laterals, except at places and points designated and established by the government.

Now, it is alleged that, in violation of these contractual relations of the defendants toward the government, and of the rights of the gov-

ernment to maintain and operate its main ditch and laterals over and through the lands of the defendants, the defendants have cut the banks of the Stukel lateral at several places not designated by the government, and insist that they have a right to take water from said lateral and the main canal at whatever point and whenever they may desire, and the question is presented whether the defendants have such right.

The defendants deny that they have cut the banks of the lateral as alleged, but several witnesses have testified that C. A. Bunting admitted to them that he opened, widened, and deepened three or four outlets from the Stukel lateral at higher elevations, with a view to increasing the area of irrigation upon his premises, and there seems to be little doubt as to that. Furthermore, Bunting claims in his testimony that he had a right to do these things, although not affirming that he did them. His theory, however, as to the relative rights existing between himself and the government, is in effect that he is the owner of the fee of the land over which the water in the ditch and laterals flows, while the government has the right to the use of the canal and laterals for flowing water through them, and that, being the owner of the soil in fee, he has the right to control the banks of the runways, and therefore has the right to take water from such runways at whatsoever points he desires, and to devote the same to his uses.

Tracing the history of the construction of the main canal and these laterals, as above very briefly narrated, it would seem that the government, through its predecessor, at least acquired a permissive easement over the lands traversed by such canal and laterals. But, however this may be, the defendants are clearly estoppped by what they have done in becoming shareholders in the Water Users' Association and accepting the form of stock issued by the association, and agreeing to be bound in taking water by the rules and regulations prescribed by the Secretary of the Interior. They are bound by their own agreement to conform to these rules and regulations, and will not and ought not to be permitted to insist upon taking water contrary thereto. The rules and regulations are designed for the government of all the water users, and, unless they are enforced, it is manifest that the project would soon be in a confusion that would defeat the very purposes of putting it on foot.

The government should have its injunction as prayed, and it is so ordered. But, considering that the defendants are not wholly without equity, and much expense has been incurred in taking the testimony that might and should have been avoided, for which neither party is free from fault, neither party will be permitted to recover costs and disbursements from the other.